UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 10-60353-Civ-COOKE/TORRES**

FRONTIER DEVELOPMENT, LLC,

      Plaintiff,

v.

JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION,

      Defendant,

and

FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER FOR
WASHINGTON MUTUAL BANK

      Intervenor.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

    Plaintiff, Frontier Development, LLC, filed its Complaint (ECF No. 1) on March 9, 2010 against Defendant, JPMorgan Chase Bank, N.A., asserting claims of abandonment, breach, repudiation, and/or anticipatory breach of a lease. Defendant filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction on February 3, 2014 (ECF No. 36). Plaintiff filed its Response to Motion to Dismiss and Supporting Memorandum of Authority on February 18, 2014 (ECF No. 37), to which Defendant filed its Reply in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction on February 28, 2014 (ECF No. 38), along with a Notice of Supplemental Authority on March 11, 2015 (ECF No. 40). Therefore, this matter is fully briefed and ripe for adjudication. For the reasons explained below, Defendant's Motion to Dismiss is granted.

### I. BACKGROUND

    Frontier Development, LLC ("Frontier") is a Mississippi limited liability company

with its principal place of business in Dade County, Florida. Compl. ¶ 1. On January 18, 2008, Frontier entered into a Ground Lease ("Lease") with Washington Mutual Bank ("WaMu") pertaining to real property ("Property") located in Broward County, Florida. *Id.* at ¶ 5.

On September 25, 2008, following the financial meltdown and collapse of hundreds of banks, the Office of Thrift Supervision closed WaMu and appointed the Federal Deposit Insurance Corporation ("FDIC") as WaMu's receiver under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L.No. 101-73, § 212 (codified as amended by 12 U.S.C. § 1821(c)). The FDIC's statutory objective was to handle the "liquidation or winding up of the affairs of an insured Federal depository institution. . . ." 12 U.S.C. 1821(c)(2)(A)(ii). That same day, in its efforts to distribute WaMu's remaining assets and liabilities, the FDIC entered into a Purchase and Assumption Agreement ("PAA") with Defendant, JPMorgan Chase Bank, N.A. ("Chase"), whereby Chase acquired some—but not all—of WaMu's assets and liabilities. Def.'s Mot. Dismiss 2.

Section 13.5 of the PAA specifically disclaims any intention by the FDIC or Chase to confer any benefit upon third parties, providing that:

> All terms and conditions of this Agreement shall be binding on the successors and assigns of the Receiver, the Corporation, and the Assuming Bank. Except as otherwise specifically provided in this Agreement, nothing expressed or referred to in this Agreement is intended or shall be construed to give any Person other than the Receiver, the Corporation, and the Assuming Bank any legal or equitable right, remedy, or claim under or with respect to this Agreement or any provision contained herein, it being the intention of the parties hereto that this Agreement, the obligations and statements of responsibilities hereunder, and all other conditions and provisions hereof are for the sole and exclusive benefit of the Receiver, the Corporation, and the Assuming bank and for the benefit of no other Person.

*Id.* at 7. The PAA also transferred to Chase leases for two categories of real property: "Bank Premises" and "Other Real Estate." *Id*. at 5. For leases of "Bank Premises," Chase reserved a 90-day option to accept or reject the lease, whereas "Other Real Estate" leases were assigned to Chase upon execution of the PAA. *Id*. This distinction arose from the speedy nature of the transaction: the FDIC needed to liquidate WaMu quickly and efficiently, which left little time for an acquiring institution to determine whether the failed bank's facilities were

compatible with the acquiring institution's business. *Id*. The 90-day option addressed this concern. *Id*.

The FDIC and Chase maintain that at all times, they understood the Property to be a "Bank Premise" under the PAA such that Chase had a 90-day option to accept or decline the assignment of its Lease. *Id.* at 5-6. Consistent with this understanding, Chase gave timely notice to the FDIC that it would not assume the Lease and the FDIC determined that Chase's notice and election was a proper exercise of its contractual right under the PAA. *Id.* at 6. Chase later notified Frontier that it had elected not to assume the Lease. Compl. ¶ 9.

After Chase exercised its option, the FDIC continued to treat the Lease as a retained liability and later determined that compliance with the Lease would be burdensome to the WaMu receivership. Def's Mot. Dismiss 6. Pursuant to 12 U.S.C. § 1821(e), the FDIC may "disaffirm or repudiate any contract or lease . . . the performance of which the . . . [the FDIC] determines to be burdensome . . . ." Accordingly, the FDIC notified Frontier that it would exercise its statutory right to disaffirm the Lease. *Id*.

On March 9, 2010, Frontier filed suit against Chase, and the FDIC intervened. In its Complaint, Frontier alleges that, because of unfinished renovations, WaMu did not occupy the Property at the time of closing. Compl. ¶ 9. Therefore, according to Frontier, the Lease was an "Other Real Estate" lease automatically assigned to Chase upon execution of the PAA, making Chase's notification to reject the Lease a repudiation of its assigned duty to pay rent. *Id*. On November 23, 2010, Chase and FDIC filed an Agreed Motion to Stay Proceedings in anticipation of Fifth and Ninth Circuit judgments on the same question presented here. This Court granted the Agreed Motion. On January 10, 2013, the Eleventh Circuit also ruled on this issue.

## II.  LEGAL STANDARDS

### A. Standing

Standing is a threshold jurisdictional question. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). A dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction. *Id*. A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure can be either a "facial attack" or a "factual attack." *Lawrence v. Dunbar*, 919

F.2d 1525, 1528-29 (11th Cir. 1990). "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). On the other hand, factual attacks challenge the existence of subject matter jurisdiction using material outside of the complaint, such as testimony and affidavits. *Id.* Where, as here, the challenge is factual, the trial court does not accept the allegations of the complaint as true, but considers testimony and affidavits irrespective of the complaint. *Id*. A dismissal for lack of subject matter jurisdiction should be entered without prejudice because it is not a judgment on the merits. *Stalley*, 524 F.3d at 1232.

## B. Binding Precedent

Under the "binding precedent rule," a court has no discretion to depart from the holding of a higher court. *See Johnson v. DeSoto Cnty. Bd. of Comm'rs*, 72 F.3d 1556, 1559 (11th Cir. 1996). The Eleventh Circuit's ruling in *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927 (11th Cir.), *cert. denied*, 134 S. Ct. 175 (2013) binds this Court and controls the issue before it.

## III.  ANALYSIS

The facts of *Kanner* are nearly identical to the facts here: a lessor, Interface Kanner, entered into a lease agreement with WaMu before it failed in 2008. *Id.* at 929. Then, in September 2008, after WaMu failed and the FDIC was appointed its receiver, JPMorgan Chase acquired some of WaMu's outstanding assets and liabilities, including the lease between Kanner and WaMu. *Id*. The transfer was conducted under a Purchase and Assumption Agreement (the same one that Frontier seeks to enforce here), which divided leases into "Banking Premises" and "Other Real Estate," and which reserved for Chase a 90-day purchase option for leases of "Banking Premises." *Id.* at 929-30. Kanner asserted that its property, originally leased to WaMu, was "Other Real Estate" pursuant to Chase's Agreement with the FDIC and, therefore, was directly assigned to Chase upon execution of the Agreement. *Id.* at 930. This interpretation contradicted the understanding between Chase and the FDIC that the Kanner property was a "Bank Premises" with a 90-day option for

Chase to accept or reject. *Id.* The Eleventh Circuit ultimately held that the district court lacked subject matter jurisdiction to hear the case. *Id.* at 929.

First, the Eleventh Circuit found that federal law governed the question of Kanner's standing to enforce the contract as a third-party beneficiary. *Id*. at 932. The Agreement included a choice-of-law provision opting for federal law and neither party provided any reason why the provision would contravene public policy. *Id*. "In diversity cases, the choice-of-law rules of the forum state determine what law governs, and under Florida law, courts enforce choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." *Id*. (internal citations and quotations omitted).

Following the federal common law of contracts, "only a party to a contract or an intended third-party beneficiary may sue to enforce the terms of the contract." *Id.* at 932-33 (citing *GECCMC, 2005–C1 Plummer St. Office L.P. v. JPMorgan Chase Bank, N.A.*, 671 F.3d 1027, 1032–33 (9th Cir.2012)). Members of the public are presumed to be incidental beneficiaries to government contracts even though these contracts often benefit the public. *Id.* at 933. To overcome this presumption and establish standing as a third-party beneficiary, Kanner needed to show that the FDIC and Chase clearly intended to benefit Kanner. *Id.* The Eleventh Circuit, following the Ninth Circuit's decision in *GECCMC*, rejected Kanner's argument and concluded that "the P & A Agreement did not reflect a clear intent to confer a benefit on the landlord." *Id.* (internal quotations omitted). Because Kanner was not an intended third-party beneficiary, it lacked standing to enforce the contract; and, because Kanner lacked standing to enforce the contract, it could not enforce an interpretation of the contract to demonstrate the transfer of privity of estate. *Id*.

Frontier fails to distinguish its factual circumstances from those in *Kanner*. Instead, like Interface Kanner, Frontier attempts to interpret the terms of the PAA to establish privity of estate between itself and Chase. But the Eleventh Circuit's decision in *Kanner* completely forecloses any attempt by Frontier to interpret the contract without first establishing that it has standing to do so. 704 F.3d at 933. And, while Frontier may appear to be stuck in a frustrating roundabout of law (it lacks standing to prove that it has standing), the Second Circuit explained, in a nearly identical case, that this outcome comports with the intention of the statutory scheme:

5

Finally, we note that our conclusion accords with one of the purposes of FIRREA, which is "[t]o provide funds from public and private sources to deal expeditiously with failed depository institutions," FIRREA, Pub.L. No. 101–73, § 101(8), 103 Stat. 183, 187, and "to enable the receiver to efficiently determine creditors' claims and preserve assets of the failed institution without being burdened by complex and costly litigation," *Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.,* 28 F.3d 376, 388 (3d Cir.1994). Permitting Hillside to proceed against Chase would risk significantly curtailing the FDIC's "extensive [statutory] power and discretion to manage the affairs of the failed bank," *GECCMC,* 671 F.3d at 1030, as well as its authority to repudiate leases with respect to which the failed bank was the lessee.

*Hillside Metro Associates, LLC v. JPMorgan Chase Bank, Nat. Ass'n*, 747 F.3d 44, 46 (2d Cir. 2014), *cert. denied sub nom. Hillside Metro Associates, LLC v. JPMorgan Chase Bank*, 135 S. Ct. 1399 (2015). Moreover, Frontier was not without recourse: "FIRREA makes equally clear that [a landlord's] recourse to sue for unpaid rent or other damages as a result of the alleged breach of its lease was against the FDIC, not Chase." *Id.* In *Hillside*, the Second Circuit elaborated on the policy of the Eleventh Circuit's decision in *Kanner*, which decisively prevents Frontier from enforcing the PAA against Chase.

### IV. CONCLUSION

Therefore, for the reasons explained above, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 36) is **GRANTED**. Plaintiff's Complaint is **DISMISSED** *without prejudice*. All pending motions, if any, are **DENIED** as moot. The Clerk is directed to **CLOSE** this case.

**DONE and ORDERED** in chambers, at Miami, Florida, this 17th day of June 2015.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of Record*